**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| **THOMAS JIRIES, NICOLE PINCKNEY, ANTWON FLUTE and, YVAUGHN BROWN, individually and on behalf of all others similarly situated,**<br><br>*Plaintiff(s)*,<br><br>v.<br><br>**THE BOEING COMPANY,**<br><br>*Defendant*. | Case No.: __2:26-cv-01310-DCN__<br><br><br><u>**JURY TRIAL DEMANDED**</u> |

<u>**COLLECTIVE AND CLASS ACTION COMPLAINT**</u>

Plaintiff(s) Thomas Jiries, Nicole Pinckney, Antwon Flute, and Yvaughn Brown, individually and on behalf of all others similarly situated, upon personal knowledge of the facts pertaining to Plaintiff(s) and on information and belief as to all other matters, bring this Complaint against Defendant, The Boeing Company ("Defendant"), alleging as follows:

<u>**JURISDICTION & VENUE**</u>

1.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 and 29 U.S.C. §216(b) because this action involves a federal question under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201, *et seq*.

2.      This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367(a) because they are so related to the FLSA claim over which the Court has original subject matter jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

3. This Court has personal jurisdiction over Defendant because it operates within the State of South Carolina and within this District.

4. Venue is proper pursuant to 28 U.S.C. §1391(b) because at least one Plaintiff was injured in this District, Defendant maintains a principal place of business in this District, and a substantial part of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

5. Plaintiff Thomas Jiries is, and at all times relevant hereto was, a resident and citizen of South Carolina. In or around April 2025, Plaintiff was employed by Defendant as an Airplane Mechanic Assembler and worked primarily at 5400 International Boulevard, North Charleston, South Carolina 29418. Plaintiff's written consent to join this action is attached as **Exhibit A**. At all relevant times, Plaintiff has been engaged in commerce or in the production of goods for commerce within the meaning of Sections 6 and 7 of the FLSA, 29 U.S.C. §§206-207.

6. Plaintiff Nicole Pinckney is, and at all times relevant hereto was, a resident and citizen of South Carolina. In or around September 2023, Plaintiff was employed by Defendant as a Quality Assurance representative and worked primarily at 5400 International Boulevard, North Charleston, South Carolina 29418. Plaintiff's written consent to join this action is attached as **Exhibit A**. At all relevant times, Plaintiff has been engaged in commerce or in the production of goods for commerce within the meaning of Sections 6 and 7 of the FLSA, 29 U.S.C. §§206-207.

7. Plaintiff Antwon Flute is, and at all times relevant hereto was, a resident and citizen of South Carolina. In or around 2021, Plaintiff was hired by Defendant as a Systems Mechanic and worked primarily at 5400 International Boulevard, North Charleston, South Carolina 29418. Plaintiff's written consent to join this action is attached as **Exhibit A**. At all relevant times, Plaintiff

2

has been engaged in commerce or in the production of goods for commerce within the meaning of Sections 6 and 7 of the FLSA, 29 U.S.C. §§206-207.

8. Plaintiff Yvaughn Brown is, and at all times relevant hereto was, a resident and citizen of South Carolina. In 2025, Plaintiff was hired by Defendant as a Supply Chain Management Analyst and worked primarily at 5400 International Boulevard, North Charleston, South Carolina 29418. Plaintiff's written consent to join this action is attached as **Exhibit A**. At all relevant times, Plaintiff has been engaged in commerce or in the production of goods for commerce within the meaning of Sections 6 and 7 of the FLSA, 29 U.S.C. §§206-207.

9. Defendant, The Boeing Company is a foreign company with a principal place of business located at 5400 International Boulevard, North Charleston, South Carolina 29418. Defendant can be served via its registered agent, Corporation Service Company, at 100 Coastal Drive, Suite 210, Charleston, South Carolina 29492.

## FACTUAL ALLEGATIONS

10. Defendant owns and/or operates facilities in South Carolina where the 787 Dreamliner is fabricated, assembled, and delivered to customers all over the world (the "Boeing South Carolina Facility").[1]

11. In or around August 2025, Defendant began a $1 billion expansion of its 787 program at its South Carolina production facility. As part of the Boeing South Carolina Facility renovation, Defendant relocated all employee parking from the main campus to a new remote lot on the opposite side of International Boulevard near South Aviation Avenue. The new remote lot is not within the normal commuting area for the Boeing South Carolina Facility.

---

[1] https://weareboeingsc.com/our-story/

3

12.     Defendant derived significant benefit by converting and repurposing the employee parking lot as part of its expansion project.

13.     Plaintiff(s) and Class Members[2] (later defined) work or have worked for Defendant at the Boeing South Carolina Facility within the last three (3) years. At all times relevant hereto, Plaintiff(s) and Class Members were non-exempt, hourly-paid employees of Defendant.

14.     Defendant is an employer within the meaning of 29 U.S.C. §203(d) and an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §203(s)(1).

15.     At all times material hereto, Plaintiff(s) and Class Members have been subject to the same contracts, plans, policies, and practices related to compensation, recording of their hours, scheduling, overtime, and entitlement to be paid for all hours worked.

16.     Defendant routinely requires Plaintiff(s) and Class Members to perform off-the-clock work for which they are not compensated. Pre-shift duties performed off-the-clock by Plaintiff(s) and Class Members include scanning badges, clearing security, waiting at the remote parking lot, boarding a shuttle, and traveling from the parking site to the Boeing South Carolina Facility. Wait times for a shuttle can be up to sixty (60) minutes.  Plaintiff(s) and Class Members are not compensated for this time.

17.     At the end of their shifts, Plaintiff(s) and Class Members are required to wait until a shuttle arrives and returns them to the remote parking lot. This activity happens after Plaintiff(s) and Class Members are no longer on-the-clock. Plaintiff(s) and Class Members are not compensated for this time.

---

[2] The term "Class Members" includes members of the FLSA Collective as defined herein.

18.     Plaintiff(s) and Class Members are each scheduled to work 8-hour shifts. But Plaintiff(s) and Class Members are required to arrive 45-60 minutes earlier than their scheduled shift start to navigate the remote shuttle.

19.     Plaintiff Pinckney's shift runs from 5:30 a.m. until 2:00 p.m. However, Plaintiff Pinckney was required to report to the remote lot by 4:30 a.m.

20.     Plaintiff Jiries' shift runs from 2:30 p.m. until 11:00 p.m. However, Plaintiff Jiries was required to report to the remote lot by 1:45 p.m.

21.     Plaintiff Brown's shift runs from 2:00 p.m. until 10:30 p.m. However, Plaintiff Brown was required to report to the remote lot by 1:00 p.m.

22.     Plaintiff Flute's shift runs from 5:00 a.m. until 1:30 p.m. However, Plaintiff Flute was required to report to the remote lot by 4:00 a.m.

23.     Plaintiff(s) and Class Members are paid for eight (8) hours regardless of the hours they work. This means that Plaintiff(s) and Class Members are required to report to the remote parking lot up to an hour before their shift begins but are not paid for the time spent at the parking facility.

24.     Similarly, after Plaintiff(s) and Class Members' shift ends, they must wait an additional 30-minutes to an hour for the shuttle to return and transport them back to the remote parking lot. This cycle is repeated each day Plaintiff(s) and Class Members report to work. This means that Plaintiff(s) and Class Members could not end their workday until they reached the remote parking facility. Plaintiff(s) and Class Members are not paid for the time spent waiting for the shuttle to return them to the remote parking lot.

25.     The time Plaintiff(s) and Class Members spent waiting for the shuttle was requested or required by Defendant. Plaintiff(s) and Class Members could not reach the Boeing South

Carolina Facility without reporting to the remote parking lot first and, relatedly, they could not return to their respective homes without waiting for a shuttle to take them to the remote parking lot.

26. Plaintiff(s) and Class Members could not begin or end their workday until they arrived at the remote parking lot. Therefore, the remote parking lot is the place of actual performance of Plaintiff(s) and Class Members' principal activities. Furthermore, arriving at the remote parking facility and taking a shuttle to and from the Boeing South Carolina Facility was integral and indispensable to the Plaintiff(s) and Class Members' principal activities.

27. However, Plaintiff(s) and Class Members are not compensated for the substantial time spent waiting and traveling from the remote parking lot to the Boeing South Carolina Facility at the beginning of the day or from the facility back to the remote parking lot at the end of the workday.

28. These pre- and post-shift activities were not undertaken for the Plaintiff(s) and Class Members' own convenience, were required by Defendant, and were principal to the performance of the work for which the Plaintiff(s) and Class Members were employed.

29. Defendant does not maintain accurate records of the time worked by Plaintiff(s) and Class Members as required by the FLSA.

30. Plaintiff(s) and Class Members are required to arrive 45-60 minutes earlier than their scheduled shift start, and to wait an additional 30-minutes to an hour after their scheduled shift concludes, in order to navigate the remote shuttle. Prior to Defendant closing its on-premises parking lot, Plaintiff(s) and Class Members were not required to work this additional time.

31. As a result, Plaintiff(s) and Class Members frequently work more than a 40-hour workweek. When factoring in the pre- and post-shift time required by Defendant, Plaintiff(s) and

6

Class Members performed, on average, an additional seven and one half hours of compensable work during a five-day workweek that was not compensated at either the regular or overtime rate of pay. Thus, the Plaintiff(s) and Class Members' travel time to and from the remote parking facility was not *de minimis*.

32.     Defendant knows or has reason to know that Plaintiff(s) and Class Members are performing compensable pre- and post-shift work on a regular basis.

33.     Defendant's policy and practice of requiring off-the-clock work applies equally to all Class Members.

34.     Defendant was aware or should have been aware of the FLSA's overtime requirements and was also aware of the promises it made to pay Plaintiff(s) and Class Members for all hours worked. Nevertheless, Defendant required Plaintiff(s) and Class Members to work without compensation.

35.     Defendant permitted Plaintiff(s) and Class Members to work over 40-hours per workweek without receiving overtime at the rate of one and one-half times their regular rates of pay.

36.     Defendant permitted Plaintiff(s) and Class Members to perform pre- and post-shift work under 40-hours per workweek, without receiving compensation at their regular rates of pay. Defendant's failure to pay straight time to Plaintiff(s) and Class Members was, and is, a breach of the employment agreement and a breach of the implied covenant of good faith and fair dealing.

37.     Defendant's failure to pay overtime to Plaintiff(s) and Class Members was, and is, a willful violation of the FLSA. Defendant did not act in good faith when it failed to pay Plaintiff(s) and Class Members for all hours worked over 40 in a workweek at the rate of one and one-half times their regular rate of pay.

7

## COLLECTIVE ACTION ALLEGATIONS

38.     Plaintiff(s) bring the FLSA claims individually and on behalf of similarly-situated employees who were not paid for all their overtime hours during the workweek.

39.     The collective of similarly situated employees sought to be certified as a collective action under the FLSA is defined as:

> All current and former non-exempt, hourly-paid employees of Defendant who work at the Boeing South Carolina Facility at any time within the applicable limitations period ("FLSA Collective").

40.     Plaintiff(s) have consented in writing to be part of this action pursuant to 29 U.S.C. §216(b) and such consent forms are attached hereto.  As the case progresses, additional individuals may opt-in to the action as plaintiffs and their consent forms will be filed at that time.

41.     Plaintiff(s) seek conditional and final certification of this collective action under 29 U.S.C. §216(b).

42.     Defendant is liable under the FLSA for failing to properly compensate Plaintiff and the FLSA Collective at the rate of one and one-half times their regular rates of pay for all hours worked in excess of the relevant statutory overtime threshold.

43.     There are many similarly-situated current and former employees of Defendant who—in violation of the FLSA—have been underpaid, in that they have not received all overtime compensation to which they are legally entitled, and who would benefit from issuance of Court-supervised notice of this lawsuit and the opportunity to join the lawsuit.  Thus, notice should be sent to the FLSA Collective.

44.     All such similarly-situated employees are known to Defendant, are readily identifiable, and can be located through Defendant's records.

8

## CLASS ALLEGATIONS

45.     Plaintiff(s) bring their breach of contract claims as a class action individually, and on behalf of all similarly situated individuals, pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure.

46.     The Class of employees that Plaintiff(s) seek to represent is defined as follows:

> All current and former non-exempt, hourly-paid employees of Defendant who work at the Boeing South Carolina Facility at any time within the applicable limitations period ("Class or Class Members").

47.     Excluded from the Class are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

48.     Defendant breached the contract with Plaintiff(s) and Class Members wherein Defendant promised to pay Plaintiff(s) and Class Members for all hours worked, up to 40 hours in a workweek, at their regular hourly rate of pay.

49.     Defendant has consistently and uniformly applied policies and practices requiring Plaintiff(s) and Class Members to work off-the-clock, without compensation, both before and after their paid shifts.

50.     Numerosity: The members of the Class are so numerous that joinder of all of them is impracticable. While the exact number of Class Members is unknown to Plaintiff(s), such number of affected employees is exclusively in the possession of Defendant.

9

51. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the common questions of law and fact are:

   a. Whether there is a contract between Defendant and Plaintiff(s) requiring Defendants to pay Plaintiff(s) and Class Members for all hours worked up to 40 hours in a workweek;

   b. Whether Plaintiff(s) and Class Members performed work for which they were not paid;

   c. Whether Defendant has maintained accurate records of the time worked by Plaintiff(s) and Class Members as required under the FLSA; and

   d. Whether Plaintiff(s) and Class Members are entitled to actual damages, statutory damages, and/or nominal damages as a result of Defendant's wrongful conduct.

52. Typicality: Plaintiff(s)' claims are typical of those of the other members of the Class because Plaintiff(s), like every other Class Member, was exposed to virtually identical conduct and now suffers from the same violations of the law as each other member of the Class.

53. Policies Generally Applicable to the Class: This class action is also appropriate for certification because Defendant acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's policies challenged herein apply to and affect Class Members uniformly and Plaintiff(s)' challenges of these policies hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to a single Plaintiff.

54. Adequacy: Plaintiff(s) will fairly and adequately represent and protect the interests of the Class Members in that Plaintiff(s) have no disabling conflicts of interest that would be antagonistic to those of the other Class Members. Plaintiff(s) seek no relief that is antagonistic or adverse to the Class Members and the infringement of the rights, and the damages suffered are

10

typical of other Class Members. Plaintiff(s) have retained counsel experienced in complex class action litigation.

55.     Superiority and Manageability: The class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like Defendant. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

56.     The nature of this action and the nature of laws available to Plaintiff(s) and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief for the wrongs alleged because Defendant would necessarily gain an unconscionable advantage since Defendant would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiffs were exposed is representative of that experienced by the Class and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

57.    The litigation of the claims brought herein is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrates that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

58.    Adequate notice can be given to Class Members directly using information maintained in Defendant's records.

## CAUSES OF ACTION

### COUNT I: FLSA—FAILURE TO PAY OVERTIME WAGES
**(On Behalf of Plaintiff(s) and the FLSA Collective)**

59.    Plaintiff(s) re-allege and incorporate by reference all the allegations contained in paragraphs 1-44 as if fully set forth herein.

60.    Defendant is the employer of Plaintiff(s) and the FLSA Collective.

61.    Plaintiff(s) and the FLSA Collective were entitled to receive overtime compensation at the rate of one and one-half times their regular rate of pay for all hours worked over 40 in a workweek.

62.    Defendant caused or permitted Plaintiff(s) and the FLSA Collective to work, without compensation, both before the start of, and after the end of, their scheduled shifts.  This has resulted in Plaintiff(s) and the FLSA Collective routinely working in excess of 40 hours during a workweek without compensation.

63.    By failing to pay Plaintiff(s) and FLSA Collective members overtime compensation Defendant violated the FLSA.

64.    Defendant has failed to maintain accurate records of all time worked by Plaintiff and FLSA Collective members as required by the FLSA.

12

65.     Defendant did not act in good faith when it engaged in the conduct described herein. As such, Defendant willfully, knowingly, and/or recklessly violated the FLSA.

66.     Because of Defendant's polices or practices, Plaintiff(s) and FLSA Collective members have been deprived of overtime wages due under the FLSA.

67.     As a direct and proximate result of Defendant's unlawful conduct, Plaintiff(s) and FLSA Collective members have suffered and will continue to suffer a loss of income and other damages.  Plaintiff(s) and the FLSA Collective are entitled to liquidated damages, attorneys' fees, and costs incurred in connection with this claim.

### COUNT II: BREACH OF IMPLIED CONTRACT
### (On behalf of Plaintiff(s) and Class Members)

68.     Plaintiff(s) re-allege and incorporate by reference all the allegations contained in paragraphs 1-37 and 45-58 as if fully set forth herein.

69.     Plaintiff(s) and Class Members, upon information and belief, were provided with copies of manuals, policies, procedures, handbooks, documents, or contracts, at the beginning of, and/or during, their employment with Defendant and were required to sign and return copies of these documents to Defendant as a condition of their employment. All of which created an express (or, alternatively, an implied) contract whereby Defendant agreed to compensate them for their time and effort.

70.     In providing services to Defendant, Plaintiff(s) and Class Members intended and understood that Defendant would compensate them for their time and effort. More specifically, Plaintiff(s) and Class Members entered contracts with Defendant by which Defendant promised and agreed to:

    a.  Pay Plaintiff(s) and Class Members at their respective hourly rate of pay for all hours worked, up to 40 hours per workweek;

13

b. Pay for all hours where Plaintiff(s) and Class Members were required to be on the Defendant's premises at a prescribed workplace, including at the remote parking lot;

c. Compensate Plaintiff(s) and Class Members who are required to remain on the Defendant's premises or so close thereto that the time cannot be used for the employee's own purposes; and,

d. Compensate Plaintiff(s) and Class Members for all hours worked over 40-hours in a workweek at a rate of one and one-half times their regular rate of pay.

71. Plaintiff(s) and Class Members accepted these promises by beginning and continuing their employment with Defendant and abiding by Defendant's policies, procedures, and manuals, forming contracts between the parties.

72. Defendant breached the contracts with Plaintiff(s) and Class Members by failing to pay them for all hours worked. This failure to pay proximately caused Plaintiff(s) and Class Members to suffer damages.

73. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff(s) and Class Members were damaged in that they were deprived of wages to which they were entitled. Plaintiff(s) and Class Members are therefore entitled to actual damages, consequential damages, attorneys' fees, and costs incurred in connection with this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff(s) individually and on behalf of the other members of the Class and FLSA Collective alleged herein, respectfully requests that the Court enter judgment as follows:

I. Certifying this case as a collective action in accordance with 29 U.S.C. §216;

II. Ordering prompt notice to all FLSA Collective members that this litigation is pending and that they have the right to opt-in to this litigation;

III. Certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff(s) as the representatives for the Class and counsel for Plaintiff(s) as Class Counsel;

14

IV.     For an order declaring the Defendant's conduct violates the statues and causes of action referenced herein;

V.      For an order declaring that Defendant did not act in good faith with respect to the FLSA violations described herein;

VI.     Enjoining Defendant from future FLSA violations, including but not limited to maintaining accurate records of all hours worked by Plaintiff(s) and Class Members;

VII.    Awarding Plaintiff(s) and Class Members their actual damages for unpaid wages;

VIII.   Awarding Plaintiff(s) and Class Members liquidated damages in an amount equal to the unpaid wages found due;

IX.     Awarding Plaintiff(s) and Class Members their reasonable attorneys' fees and expenses and costs of suit, and any other expense;

X.      Awarding pre- and post-judgment interest; and

XI.     Such other relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all claims in this Complaint and of all issues in this action so triable as of right.

Dated: March 27, 2026.

Respectfully Submitted,

*/s/ Paul J. Doolittle*
Paul J. Doolittle (SC Fed ID No. 6012)
**POULIN | WILLEY | ANASTOPOULO**
32 Ann Street
Charleston, SC 29403
Telephone: (803) 222-2222
paul.doolittle@poulinwilley.com
cmad@poulinwilley.com

*Attorneys for Plaintiff and Putative Class and Collective*

15